May 26, 2021

**Supreme Court**

No. 2019-432-C.A.
No. 2020-232-C.A.
(P2/13-1411A)

No. 2019-450-C.A.
No. 2020-231-C.A.
No. 2020-265-C.A.
(P1/11-654C)

|            |   |
|------------|---|
| State      | : |
| v.         | : |
| Luis M. Molina. | : |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email: opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Supreme Court

No. 2019-432-C.A.
No. 2020-232-C.A.
(P2/13-1411A)

No. 2019-450-C.A.
No. 2020-231-C.A.
No. 2020-265-C.A.
(P1/11-654C)

|                   |   |
|-------------------|---|
| State             | : |
| v.                | : |
| Luis M. Molina.   | : |

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

### O P I N I O N

**Justice Lynch Prata, for the Court.**  The defendant, Luis Miguel Molina, appeals from an order denying his motions to dismiss and to reconsider, which were denied after a finding of a probation violation.  He also appeals from the Superior Court judgment adjudicating him a probation violator and the decision denying his motion to recuse.  These consolidated appeals came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised should not be summarily decided.  After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that the appeals may be decided without further briefing or argument.

-1-

For the reasons set forth herein, we affirm the judgment, order, and decision from which defendant appeals.

**Facts and Travel**

In 2011, defendant was charged with first-degree robbery and conspiracy in P1/11-654C. The defendant subsequently entered a plea of nolo contendere to the amended charge of one count of second-degree robbery, for which he received a sentence of ten years at the Adult Correctional Institutions, with eighteen months to serve and the remainder suspended, with probation. While on probation in 2013, defendant was charged with two counts of manufacturing/delivering/possessing marijuana with intent to deliver and one count of conspiracy in P2/13-1411A. The defendant then entered a plea of nolo contendere to the amended charge of one count of conspiracy to possess marijuana and was sentenced to eight years at the ACI, with one year to serve and the remainder suspended, with probation.

On February 5, 2019, following a monthlong investigation and while defendant was out of the ACI but on probation, members of the Rhode Island State Police executed a search warrant at 19 Ocean Street, First Floor, Providence, where they discovered defendant and "33.7 grams of Fentanyl in the kitchen, [a] digital scale, numerous clear plastic baggies, cutting agent, and a .380 caliber Smith and Wesson M&P Bodyguard firearm, and a large amount of US Currency." The defendant was charged on that date with multiple counts, including possession of a

-2-

firearm while in possession of fentanyl with intent to deliver, delivery/possession of fentanyl with intent to deliver/manufacture, possession of between one ounce and one kilogram of fentanyl, conspiracy to violate the Rhode Island Uniform Controlled Substances Act, and possession of a firearm by a person convicted of a crime of violence.[1] The same day, the state filed notices of probation violation pursuant to Rule 32(f) of the Superior Court Rules of Criminal Procedure in both P1/11-654C and P2/13-1411A, which gave rise to the instant appeals.

The case was scheduled for a hearing on February 19, 2019, at which time defendant's counsel requested a copy of the search warrant, and the case was continued to February 25, 2019. The matter was further continued on numerous dates between February and July 2019.

On August 15, 2019, a justice of the Superior Court held a combined violation and bail hearing over two days. On the first day, defense counsel requested that defendant's motion to dismiss/withdraw the violation and defendant's objection to the violation hearing, which had been filed by the defendant *pro se* on August 6, 2019, be heard that day. In his motions, defendant argued that the requirements set

---

[1] The police also executed a search warrant at 23 Babcock Street in Providence, where they found the defendant's brothers, who are named Luis Armando Molina, Luis Alberto Molina, and Luis Enrique Molina, and "[a]pproximately 90 grams of Fentanyl, a large amount of US Currency, digital scale, and numerous clear plastic baggies, and associated paperwork." The defendant's brothers were also arrested and charged, and it was later agreed that for purposes of the violation and bail hearings, the state's case against defendant and his brothers would be heard together.

forth in G.L. 1956 § 12-19-9, including a timely bail and violation hearing, were violated.

There was no dispute that defendant had not notified the state of the filings until the morning of August 15, 2019. Defense counsel suggested "a very short continuance" for the state to prepare. The state objected to a continuance of the violation hearing on the ground that the witnesses were present. The hearing justice reserved defendant's right to be heard on whether the hearing was timely, and the court proceeded with the violation hearing. The hearing justice reasoned that defendant had asked for a prompt hearing, the witnesses were present, and the state was prepared to move forward "so the best way to do it is to begin a hearing[.]" The defendant made no further objection, and the violation hearing commenced with testimony from Detective Thomas Zincone, Jr., of the Providence Police Department, the one witness.[2]

Detective Zincone testified that he was assigned to the high-intensity drug trafficking area unit (HIDTA). He said that, in January 2019, he began investigating

---

[2] Although the violation hearing was set to commence against three of the brothers, Luis Alberto Molina admitted to violating probation, was sentenced to serve twenty-four months, and was denied bail on the new charges. Luis Enrique Molina also admitted to violating probation, was sentenced to serve eighteen months, and was denied bail.

"Louis Molina."[3] The detective testified that his surveillance included 19 Ocean Street and 23 Babcock Street in Providence.

Detective Zincone testified that, throughout the investigation, he saw defendant use keys to enter and exit the front door at 19 Ocean Street and that the utilities at 19 Ocean Street, first floor, were in defendant's name.[4] On one occasion, Det. Zincone saw a white Audi and a blue Nissan Xterra parked in the driveway. He testified that, on that same day, he saw defendant and his brother Luis Enrique Molina leave the house together and get into the blue Xterra, with defendant behind the wheel. Detective Zincone testified that he observed the brothers as they drove to an apartment complex in Coventry, where an unidentified male from one building got into the back seat of the vehicle for ten to fifteen seconds and then ran back into the complex. Detective Zincone also testified he saw defendant at 23 Babcock Street, a single-family residence.

Detective Zincone testified that he obtained a search warrant for each address at the conclusion of his investigation, which also included several controlled buys of heroin. Detective Zincone recounted that at about 5 a.m. on February 5, 2019, raids

---

[3] As previously noted, defendant has three brothers named "Luis Molina." Detective Zincone did not clarify which brother was under investigation. Furthermore, defendant's name is misspelled throughout the transcript as "Louis"; therefore, quotation marks are being used.

[4] Detective Zincone testified that 19 Ocean Street was an "up-and-down duplex."

were simultaneously executed at 19 Ocean Street and 23 Babcock Street by agents and members of law enforcement.

Detective Zincone testified that he was part of the search team at 19 Ocean Street. According to the detective, members of the police rang the bell and immediately entered the first floor. He testified that defendant was the only person in the house and that he was detained while police conducted a room-to-room search of the premises.

Detective Zincone testified that he searched the bedroom, where he found defendant's photographic identification, a BJ's grocery store member card, cell phones, cash totaling $9,000 in a pocketbook hanging on the door, a Rolex watch, and the motor vehicle title to an Audi. Detective Zincone also testified that other members of the HIDTA unit found fentanyl, a digital scale, a cutting agent, and a money counter in the kitchen. Detective Zincone testified that a box of plastic bags was found inside the dishwasher and that two shoeboxes containing $90,040 and $98,750 in cash were found in another bedroom.

Detective Zincone also testified that a Nissan Xterra and an Audi were parked outside 19 Ocean Street when police arrived to execute the search warrant. Detective Zincone explained that a key to the Audi was found in the kitchen of that address and that a .38-caliber Smith & Wesson handgun was found under the hood of the Audi. Detective Zincone testified that he believed the Audi and the Xterra were

registered to defendant's mother and that the title to the Audi was in her name. He further testified that defendant's three brothers were apprehended at 23 Babcock Street.

The defendant rested without presenting any evidence. After hearing the witness testimony of Det. Zincone, the hearing justice delivered a bench decision. The hearing justice reviewed the evidence and determined that defendant failed to keep the peace and be of good behavior. He found that Det. Zincone was a very credible witness and that the state's evidence was strong and convincing. The hearing justice pointed out that Det. Zincone described defendant, his use of the key, and his access and use of the house at 19 Ocean Street. The hearing justice found that there were drugs and drug paraphernalia in the kitchen, a common room used by all residents. Also, he found that there was approximately $190,000 in cash in another room and that there were several cell phones scattered throughout the house. He found that defendant had access, custody, and possession of the house and that defendant had slept at 19 Ocean Street and was there alone at the time of the raid, early in the morning.

The hearing justice also concluded that the state proved by a preponderance of the evidence that defendant was in exclusive possession of 19 Ocean Street, including the drugs in the kitchen area. This had been proven because defendant was the only person in the apartment, the only person with a key, the only person

-7-

who locked the door, the only person who parked his car outside, and the only person whom Det. Zincone saw coming and going five or six times. The defendant's name was also on the electric bill and on the photographic identification found in the house. In addition, the hearing justice concluded that the state proved that the Audi was defendant's vehicle and that there was a gun inside the Audi, which, because defendant had been convicted of a felony, constituted a failure to keep the peace and be of good behavior.

The hearing justice concluded that, based on the amount of drugs, drug paraphernalia, cash, cutting agents, and plastic bags found at 19 Ocean Street, as well as the presence of a money-counting machine, the state had proved by more than a preponderance of the evidence that defendant was a violator of his probation in both P1/11-654C and P2/13-1411A.

In determining a sentence, the hearing justice considered the two underlying convictions and defendant's criminal history. He commented on the impact of controlled substances such as heroin and fentanyl on the neighborhood, community, and state, and also commented on defendant's opportunities to reform. The hearing justice invoked six years of defendant's suspended sentence in P1/11-654C and continued the sentence in P2/13-1411A. He ordered defendant held without bail on the new charges. Following this oral pronouncement, defendant filed a timely notice of appeal in each underlying case.

Less than a week later, on August 21, 2019, defendant was heard on his motion to dismiss the violation and motion to recuse. The defendant argued that the hearing justice should recuse himself because he had held the violation hearing before he considered defendant's motion to dismiss based on timeliness. He argued that the hearing justice found that defendant was a probation violator when there was no evidence to support that finding and that he found that Det. Zincone was credible when, defendant argued, the detective had lied under oath about where the drugs were found. The hearing justice reviewed his prior decisions and determined that he had been impartial. He then denied defendant's motion to recuse.

Next, defendant was heard on his motion to dismiss. First, he acknowledged that he had waived his right to a bail hearing within ten days by requesting discovery. However, he argued that he had not waived his right to a violation hearing within thirty days and, thus, the state's notice of violation should have been dismissed. He acknowledged that there were multiple requests for continuances from the attorneys who represented his brothers, but he argued that he never asked for, nor consented to, a continuance. He maintained that any agreement on his part to a continuance was well beyond the thirty days and, according to defendant, the time it took to obtain the discovery he requested should be excluded from calculating the thirty-day period.

The state countered that defendant had waived his right to a violation hearing within thirty days. According to the state, the matter was continued initially at defendant's request for an attorney, who ultimately entered his appearance on February 12, 2019. At that time, the case was reassigned to February 19, 2019, for a hearing without witnesses; the state asserted that on that date, defendant requested a copy of the search warrant, and the case was continued to February 25, 2019. The state maintained that on February 25, 2019, there was a conference at which the state made an offer, and the case was then continued by agreement to March 19, 2019.

The hearing justice reviewed the record and found that there was not enough evidence to determine whether or to what extent defendant had contributed to the delay. He said he was not convinced that defendant's right to a prompt hearing was violated or that defendant did not waive his right; in fact, the hearing justice found that there were facts from which to infer that defendant had waived his right. Specifically, the hearing justice mentioned that, on February 25, 2019, the state made an offer, the negotiations were ongoing, and defendant agreed to continue the matter to March 19, 2019. However, because he found that there was not enough evidence to determine whether defendant had waived his right within the thirty days, he ruled, "The motion is denied without prejudice." The defendant then filed two notices of appeal, one in each underlying case.

-10-

Subsequently, defendant filed a motion to reconsider the denial of his motion to dismiss, along with an accompanying memorandum and an affidavit from defense counsel. The defendant argued that the continuances after the first three conferences were all requested by his brothers' attorneys without his knowledge or agreement and that, contrary to the state's assertion that when he requested a hearing in July 2019, it was granted, the hearing was not held until August 15, 2019. In his affidavit, defense counsel acknowledged the various reasons the case was continued through August 2019. Significantly, he acknowledged that, on February 25, 2019, the documents he requested were provided and the matter was continued to March 19, 2019. He also acknowledged that the case was continued at least once after that by agreement.

The defendant's motion to reconsider was heard by the same hearing justice. Defense counsel clarified that, until April 23, 2019, he consented to the continuances. The state maintained that defendant failed to produce any new information to support reconsideration of his motion to dismiss. In addition, the state argued that defense counsel had waived defendant's right to a violation hearing within thirty days by agreeing to continuances beyond the first thirty days.

The hearing justice concluded that his original decision on defendant's violation spoke for itself, and he denied defendant's motion to reconsider that decision. On the issue of the cause of the delay in holding a violation hearing, the

-11-

hearing justice stated that he considered defense counsel's affidavit as evidence of what actually happened.

The hearing justice determined that § 12-19-9 shifted the burden from defendant to the state to show that a delay in holding a violation hearing within thirty days was attributed to the defendant. He calculated that in this case the thirty-day period had expired on March 7, 2019. He found that defendant's violation hearing was continued until March 19, 2019, with defense counsel's consent. He concluded that defense counsel had waived the statutory requirement that a violation hearing be held within thirty days by agreeing to a continuance until March 19, 2019. As a result, he denied defendant's motion to dismiss. On December 3, 2020, an order entered denying defendant's motion to dismiss and motion to reconsider the denial of his motion to dismiss. The defendant filed several notices of appeal, and this Court consolidated the appeals for briefing and argument.

On appeal, defendant makes several arguments. First, he maintains that the hearing justice erred in denying his motion to dismiss and his motion to reconsider because there was a delay in his probation-violation hearing in contravention of § 12-19-9 and his right to due process. Second, he argues that the evidence did not support a finding that he had violated his probation. Third, he asserts that the hearing justice imposed an excessive sentence when he executed six years of the suspended sentence imposed in P1/11-654C. Fourth and finally, defendant contends that the

hearing justice should have recused himself from hearing the motion to dismiss and the motion to reconsider. We shall address each argument in turn.

## Discussion

### Due Process

The defendant first contends that the hearing justice erred in denying his motion to dismiss and his motion to reconsider the finding of his probation violation based on the delay between his arrest in February 2019, when he was held without bail, and the violation hearing in August 2019. The defendant maintains that the delay violated the ten-day limit prescribed in § 12-19-9 and his right to due process.

This Court has been clear that § 12-19-9 mandates that a defendant may be held without bail pending a probation-revocation hearing "for a period not exceeding ten (10) days, excluding Saturdays, Sundays, and holidays." Section 12-19-9(a); *see, e.g.*, *State v. Lawrence*, 658 A.2d 890, 893 (R.I. 1995). Section 12-19-9(b) also provides that the court "shall conduct a hearing within thirty (30) days of arrest unless waived by the defendant[.]"

We have said that "a defendant can not simply seek to continue his or her probation-revocation hearing beyond ten days and then suddenly turn around and claim that § 12-19-9 has been violated." *Lawrence*, 658 A.2d at 893. Thus, we held in *Lawrence* that:

> "Our interpretation of § 12-19-9 must ultimately turn on
> the nature and extent of a criminal defendant's conduct in

contributing to the delay and conversely, those continuances attributable to the state. We note that this type of inquiry is not new as this [C]ourt has consistently eschewed blind adherence to specific time periods in the criminal context, especially where the defendant's conduct heavily contributed to that period's expiration." *Id.* (citing *State v. Grundy*, 582 A.2d 1166, 1169 (R.I. 1990) (finding no violation of a defendant's right to a speedy trial despite delay due to court congestion and the state's inability to procure witnesses as the defendant himself had requested and received over nine continuances)).

Turning to the case at bar, we note that several continuances were granted, at least one at the request of defendant. In analyzing the nature and extent of defendant's conduct in contributing to the delay, we note that the initial continuance extending the matter beyond the ten-day period prescribed in § 12-19-9 was granted at defendant's request and for his direct benefit, to enable him to obtain discovery of the search warrant and affidavit. There was also a continuance granted by agreement after the state made an offer, which extended beyond the thirty-day period. The statute provides no remedy for what transpires after a waiver, absent a demand for a hearing. What is clear to us is that once the thirty-day period has run, it does not begin anew. *Cf. Bido v. State*, 56 A.3d 104, 114 (R.I. 2012) (holding that "when assessing a defendant's assertion of his or her right to a speedy trial, this Court looks for actions sufficiently aggressive to constitute the equivalent of banging on the courthouse doors") (brackets omitted) (quoting *State v. Crocker*, 767 A.2d 88, 94 (R.I. 2001)).

-14-

Therefore, we are of the opinion that, given the nature and extent of defendant's conduct in contributing to the delay in this case, defendant cannot now complain that his bail hearing was withheld following the expiration of the ten-day period prescribed in § 12-19-9. *See State v. LeBlanc*, 687 A.2d 456, 456 (R.I. 1997) (mem.) (holding that § 12-19-9 was not breached where the defendant was held without bail for more than ten days as a result of his failure to secure private counsel); *cf. State v. Vashey*, 823 A.2d 1151, 1155 (R.I. 2003) (rejecting the contention that a violation hearing was unjustly delayed where the defendant attempted to procure discovery to which he was not entitled). As such, the hearing justice did not err in denying defendant's motion to dismiss.

## Probation Violation

Second, defendant contends that there was insufficient evidence to find that he violated his probation. He maintains that Det. Zincone was not a credible witness and that the evidence was inadequate to conclude that defendant lived at 19 Ocean Street, possessed fentanyl, or was involved in any criminal activity. He also asserts that the hearing justice applied the wrong burden of proof when finding that defendant had violated his probation.

"At a probation-violation hearing, the sole issue for a hearing justice is whether the defendant has breached a condition of his or her probation by failing to keep the peace or remain on good behavior." *Neufville v. State*, 172 A.3d 161, 165

-15-

(R.I. 2017) (brackets and deletion omitted) (quoting *State v. Beaudoin*, 137 A.3d 726, 731 (R.I. 2016)). "A probation-violation hearing is 'not part of a criminal prosecution'; therefore, 'the burden of proof at a probation-violation hearing is much lower than the standard of beyond a reasonable doubt used in criminal trials.'" *Id.* (quoting *State v. Raso*, 80 A.3d 33, 42 (R.I. 2013)). "To determine whether the defendant has committed a violation, the hearing justice weighs the evidence and assesses the credibility of the witnesses." *Id.* (quoting *Beaudoin*, 137 A.3d at 731-32).

"On review, 'this Court accords great deference to the hearing justice's credibility assessments.'" *Neufville*, 172 A.3d at 165 (brackets omitted) (quoting *Beaudoin*, 137 A.3d at 732). "It is well founded that this Court 'will not second-guess supportable credibility assessments of a hearing justice in a probation-revocation hearing.'" *Id.* (quoting *Beaudoin*, 137 A.3d at 732). "Instead, this Court's 'review is limited to considering whether the hearing justice acted arbitrarily or capriciously in finding a violation.'" *Id.* (quoting *Beaudoin*, 137 A.3d at 732).

Here, the hearing justice's reliance on Det. Zincone's testimony was well-founded. Although the hearing justice noted that Det. Zincone did not have a sharp recall of who executed the warrant and he did not "take excessive notes[,]" the hearing justice found that the detective nevertheless provided a detailed description of the house, defendant's location, and defendant's bedroom, and that his testimony

-16-

was consistent with the photographs in evidence. Moreover, the hearing justice reasoned that Det. Zincone's acknowledgment of "where his knowledge was limited" boosted his credibility. In our opinion, defendant's assertion that the hearing justice overlooked evidence when he concluded that Det. Zincone was credible is unpersuasive.

As to defendant's argument regarding the sufficiency of the evidence, this Court has stated that there is no requirement that conduct be criminal in nature in order to amount to a failure to keep the peace and remain of good behavior. *State v. Brown*, 140 A.3d 768, 780 (R.I. 2016); *see State v. Gautier*, 774 A.2d 882, 887 (R.I. 2001) (holding that the defendant's presence during brutal slaying and failure to notify police was enough to establish that his conduct was lacking the good behavior expected and required by probation); *State v. Vieira*, 883 A.2d 1146, 1148 (R.I. 2005) ("At a probation violation hearing, we faithfully have held that the state is not required to prove that a defendant has committed a crime; instead, the state must prove * * * that a defendant has failed to keep the peace or remain of good behavior."). In fact, this Court has upheld a probation violation when the totality of conduct sufficiently related to prior misconduct. *See Brown*, 140 A.3d at 781.

Here, defense counsel essentially acknowledged on the record that criminal activity was occurring at 19 Ocean Street.[5] Certainly, the type of activity that

―――――――――――――――

[5] Counsel for defendant stated at the hearing:

-17-

defense counsel acknowledged was going on at 19 Ocean Street was similar to the type of criminal activity that led to defendant's underlying conviction in P2/13-1411A, in which he pled nolo contendere to conspiracy to possess marijuana with intent to deliver. In any event, even without defense counsel's acknowledgment, the hearing justice was able to "draw reasonable inferences from the evidence presented to determine whether the defendant violated the terms of his probation." *State v. Giard*, 155 A.3d 1193, 1199 (R.I. 2017) (quoting *State v. McLaughlin*, 935 A.2d 938, 942 (R.I. 2007)). In our opinion, the state presented sufficient evidence for the hearing justice to conclude, by a preponderance of the evidence, that defendant failed to keep the peace and be of good behavior given his connection and proximity to the illegal drug activity at 19 Ocean Street.

Furthermore, defendant's suggestion that the hearing justice applied the wrong burden of proof is without merit. At the hearing, the hearing justice specifically stated:

> "I'm not suggesting to the [c]ourt that there was not criminal activity a foot [*sic*] here. I'm not saying that. When she mentioned the $200,000, that clearly means something is going on.
>
> "But what I'm saying to the [c]ourt is there is no evidence at all to show that he exercised dominion and control over that fentanyl, which was hidden in a kitchen cabinet. There is no evidence[.]"

-18-

"[T]he burden on a violation hearing is a preponderance of evidence. I understand that * * *.

"Now, this doesn't mean that he necessarily committed a crime * * * . I understand that the standard is now preponderance of evidence and I will apply that standard."

The hearing justice continued that it was "a burden which the [c]ourt routinely applies and routinely instructs jurors upon." There is absolutely no indication in the record that the hearing justice applied the wrong standard in finding that defendant violated his probation.

## Excessive Sentence

The defendant also challenges the hearing justice's decision to sentence him to six years of his suspended sentence in P1/11-654C. He argues that his sentence was grossly disparate from sentences imposed in similar cases, including the two-year sentences that each of his brothers received.

It is well established that "the unexecuted portion of a probationer's suspended sentence hangs over his or her head by the single horsehair of good behavior, until such time as the term of probation expires." *State v. Parson*, 844 A.2d 178, 180 (R.I. 2004); *see State v. McKinnon-Conneally*, 101 A.3d 875, 879 (R.I. 2014). When a defendant severs that single horsehair by violating the terms and conditions of his or her probation, the hearing justice has "wide discretion to determine whether to execute *any or all* of a defendant's previously suspended sentence." *McKinnon-Conneally*, 101 A.3d at 879 (emphasis added); *see Neufville*,

-19-

172 A.3d at 165. It is also well established that, although a hearing justice must focus primarily on the nature of the first offense, he or she may also consider the circumstances of the second offense. *Id.*; *see Neufville*, 172 A.3d at 166; *see also State v. Segrain*, 243 A.3d 1055, 1062 (R.I. 2021) (holding that "consideration of the severity of a defendant's more recent wrongdoing as it relates to his or her ability to be rehabilitated is a factor that may be appropriately considered in making a sentencing determination").

In our view, the hearing justice did not abuse his discretion in sentencing defendant to the six years remaining on his previously suspended sentence. *See State v. Simpson*, 174 A.3d 1238, 1244 (R.I. 2018) (holding that the hearing justice acted "well within the ambit of her discretionary authority" when executing eighteen years of suspended sentence). While the hearing justice admitted that he knew little about defendant, he stated that he did know that defendant had been sentenced and served time in prison for committing two serious crimes and, despite being twice afforded the opportunity to reform, had violated his probation in ways that "remain shocking to our society in many different ways." The hearing justice commented on the ways illegal drugs like fentanyl destroy the lives of individuals and remain a necessary focus of attention for law enforcement in Rhode Island. The hearing justice considered that defendant's prior incarcerations "did not do enough to convince [defendant] of the error of his ways[.]" He decided that defendant's violation in this

-20-

case was one that deserved severe punishment based on the underlying cases for which defendant was on probation.

We are persuaded that the hearing justice considered several appropriate factors in making his sentencing decision. Accordingly, we believe that by executing the six years of defendant's remaining suspended sentence, the hearing justice acted well within his discretion.

## Recusal

The defendant also challenges the hearing justice's refusal to recuse on the motion to dismiss based on the hearing justice's earlier adverse rulings against the defendant. However, because the defendant did not fully brief the issue before this Court and merely wrote in his brief that "the hearing judge should have recused himself" because "there was at a minimum, an appearance of bias[,]" we deem the issue waived. *See Giddings v. Arpin*, 160 A.3d 314, 316 (R.I. 2017) (mem.) ("[S]imply stating an issue for appellate review, without a meaningful discussion thereof or legal briefing of the issues, does not assist the Court in focusing on the legal questions raised, and therefore constitutes a waiver of that issue.") (quoting *Giammarco v. Giammarco*, 151 A.3d 1220, 1222 (R.I. 2017)).

## Conclusion

For the reasons outlined in this opinion, we affirm the judgment of the Superior Court adjudicating the defendant a probation violator, affirm the order

denying the defendant's motion to dismiss and motion to reconsider, and affirm the hearing justice's denial of the defendant's motion to recuse. The record may be returned to the Superior Court.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI 02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Luis M. Molina. |
| **Case Number** | No. 2019-432-C.A.<br>No. 2020-232-CA.<br>(P2/13-1411A)<br><br>No. 2019-450-C.A.<br>No. 2020-231-C.A.<br>No. 2020-265-C.A.<br>(P/1-11-654C) |
| **Date Opinion Filed** | May 26, 2021 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Erin Lynch Prata |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Jeffrey A. Lanphear |
| **Attorney(s) on Appeal** | For State:<br><br>Owen Murphy<br>Department of Attorney General<br>For Defendant:<br><br>John F. Cicilline, Esq. |